IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARITHA LAGAIL DIXON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:21-CV-02070-E-BH |
| | § | |
| JELENA McWILLIAMS, Chairman | § | |
| Federal Deposit Insurance | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, *Defendant's Rule 12(b)(6) Motion to Dismiss and Brief in Support*, filed March 8, 2022 (doc. 21), should be **GRANTED,** and *Plaintiff's Rule 56 Motion for Summary Judgment and Brief in Support,* filed March 28, 2022. (doc. 23) should be **DENIED**.

**I. BACKGROUND**

In this employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. (ADEA), Aritha L. Dixon (Plaintiff) sues Jelena McWilliams (Defendant) in her official capacity as the chairperson for the Federal Deposit Insurance Corporation (FDIC). (*See* doc. 3 at 1.)[2] She alleges that she was discriminated against based on her age, race, and sex. (*Id.*)

---

[1] By *Special Order 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the

Plaintiff initially began working for the FDIC in a contract position in July of 2009, and in March 2010, she accepted a term appointment. (*Id.* at 1.) In March 2013, she was instructed to charge her time to "the FDIC permanent employee code". (*Id.*) She did not realize at that time that there was a difference between the permanent employee code and the term appointment code. (*Id.*) Her time cards were certified by the detail reporting manager and supervisors every two weeks, and periodic audits resulted in no findings. (*Id.*) After the retirement of the manager to whom she directly reported, Plaintiff applied and was selected for a nine-month detail in Arlington, Virginia, beginning on November 16, 2014. (*Id.* at 2.) Because the detail required her to travel, she first met with a travel policy specialist to go over travel guidelines and work schedules. (*Id.*)

During the detail, Plaintiff was again instructed to charge her time to the permanent employee code. (*Id.*) In December 2014, she began receiving emails asking her to charge her time correctly, but she ignored them because she "knew she was charging her time correctly." (*Id.* at 2.) She asked her detail reporting manager about the emails, and her manager told her to make the corrections because she would not be able to approve Plaintiff's time cards going forward. (*Id.* at 2-3.) Plaintiff made some changes, but she was constantly targeted and harassed about her time and travel vouchers, and as a result, she was converted back to a temporary employee and her appointment was ultimately cut short. (*Id.* at 3.)

Plaintiff also claims that her original job was posted in May 2015; after she applied, she was told that she was not eligible for it, and it was awarded to another employee who could not perform the job well. (*Id.* at 3-4.) The detail reporting manager told her that she would be extended

---

page numbers at the bottom of each filing.

so that she could complete a year on the detail, and that she could apply for some positions that would be open after that. (*Id.* at 3.) She applied for those positions at the end of her detail but was notified that she was ineligible. (*Id.*)

Plaintiff also alleges that during the detail, her supervisor showed animosity towards black women, made derogatory statements about her, and harassed her and accused her of falsifying her time. (*Id.* at 4.) Before leaving her original job for the detail in Virginia, she was also in charge of developing a customer service manual. (*Id.*) She completed it, and it was going through the review process when she left. (*Id.*) She alleges that the manual only needed minimal changes and was approved, but her supervisor talked badly about her work on it, and three other employees received mission achievement awards for the manual that she had developed. (*Id.*)

Plaintiff had to undergo surgery in October of 2015, and she was still recovering when she returned to the office on November 16, 2015. (*Id.*) Her supervisor appeared to be following her around, someone complained that she was never in the office and was not working, and comments were made about the amount of annual and sick leave hours she was carrying. (*Id.* at 4-5.) After an audit of her time cards, Plaintiff was told on December 28, 2015, that some of her annual leave and sick time would be taken away. (*Id.* at 5.) Plaintiff created a spreadsheet and tried to gather documentation to refute the findings, but her access to the necessary system had been taken away. (*Id.* at 5-6.) She was part of a group that was let go in the middle of a pay period, unlike the prior group, and her last day in the office was December 30, 2015. (*Id.* at 6.) When she received her final paycheck, she saw that money and annual leave had been taken, and she received a demand notice from the Internal Revenue Service stating that she owed the agency the same amount of money that had been taken out of her last paycheck. (*Id.* at 6-7.)

Plaintiff filed a charge of discrimination with the FDIC, and an Administrative Judge with the Equal Employment Opportunity Commission (EEOC) found in favor of the FDIC. (*Id.* at 7, 15.) She timely appealed the adverse decision to the EEOC's Office of Federal Operation (OFO), which affirmed it on March 11, 2020. (*Id.* at 14-19.) The OFO's decision informed her that she could either seek reconsideration within thirty days or file a lawsuit within ninety days. (*Id.* at 18.) She timely sought reconsideration, and OFO denied her request by final decision dated September 30, 2020. (*Id.* at 11-13.) The final decision expressly informed her that she had ninety days to file a civil lawsuit. (*Id.* at 13.)

Plaintiff filed this lawsuit eleven months later, on August 31, 2021. (*Id*. at 1.) She appears to contend that she did not file her complaint timely because of her mental and physical condition, family issues, financial complications, and lack of knowledge. (*Id*. at 7-8.)  Defendant moved to dismiss the complaint as time-barred. (*See* doc. 21.) Plaintiff responded by moving for summary judgment.  (*See* doc. 23.)

## II.  12(b)(6) MOTION TO DISMISS

Defendant moves to dismiss this action under Fed. R. Civ. P. 12(b)(6). (doc. 21 at 4.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). It is well-established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*,

636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry*, 954 F.2d at 281. The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (referencing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994)). Attachments falling under these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, attached to Plaintiff's nine-page complaint are 268 pages, consisting of the EEOC's decisions, work emails, her appointment letters, the travel policy, her time records, and other correspondence and emails. Because these documents are attached to her complaint, and some are also matters of public record, they are considered part of the pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498; *see also Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider in a motion to dismiss."). Accordingly, it is unnecessary to treat the motion to dismiss as a summary judgment motion.

A. **Timeliness**

Title VII prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e–2. Similarly, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 621. Before an individual may pursue a Title VII or an ADEA claim in federal court, she must timely exhaust her available administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This typically means that the complainant must first file a charge with the EEOC and receive a "right to sue" letter. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *Edelman v. Lynchburg College*, 535 U.S. 106, 109 n.1 (2002); *Conaway v. Control Data Corp.,* 955 F.2d 358, 362 (5th Cir.1992).

Under Title VII and the ADEA, a plaintiff has ninety days after receipt of her right to sue letter from the EEOC to file suit. *See Taylor*, 296 F.3d at 379 (citing *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982)); *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 411 (5th Cir.2003) (citing 29 C.F.R. § 1601.19(a)). This 90-day limitation period is strictly construed, and courts "within this Circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired." *Id.*

On September 30, 2020, OFO's decision denying her request for reconsideration expressly informed Plaintiff that she had ninety days to file a civil lawsuit. Because she filed suit eleven months later, on August 31, 2021, her Title VII and ADEA claims are untimely.

## B. Equitable Tolling

Plaintiff's allegations in her complaint that she was unable to timely file it based on illness, family issues, financial issues, and lack of knowledge may be liberally construed as seeking equitable tolling. (doc. 3 at 7-8.)

The ninety-day limitations period is not a jurisdictional requirement, but rather, a precondition to suit that is subject to equitable tolling. *Harris v. Boyd Tunica, Inc.,* 628 F.3d 237, 239 (5th Cir.2010) (citations omitted); *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379 (5th Cir.2002). Equitable tolling applies only in "rare circumstances" and has typically been extended only where the plaintiff "actively pursued his judicial remedies by filing a defective pleading during the statutory period," or where he has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Harris,* 628 F.3d at 239 (citations omitted). The Fifth Circuit has recognized three potential bases for equitably tolling the ninety-day limitations period: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting her claim because the defendant intentionally concealed the facts; and (3) the EEOC misleading the plaintiff about her rights. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 880 (5th Cir.2003) (citing *Blumberg v. HCA Mgmt. Co.,* 848 F.2d 642, 644 (5th Cir.1988)). Although courts may consider whether other circumstances warrant equitable tolling, the Supreme Court has made clear that the doctrine is "'to be applied sparingly.'" *Ramirez,* 312 F.3d at 183 (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114-15 (2002)). A plaintiff who does not file suit within ninety days bears the burden of showing a factual basis for equitable tolling. *Ramirez v. City of San Antonio,* 312 F.3d 178, 183 (5th Cir.2002).

Here, none of Plaintiff's proffered bases for equitable tolling fall within the exceptions recognized by the Fifth Circuit. Even assuming that the statute of limitations may be tolled by mental illness, Plaintiff has alleged no facts to show that her mental condition incapacitated her or rendered her incapable of pursuing her legal remedies during the ninety-day period for filing suit. *See Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232-33 (5th Cir. 1999) (finding that even

assuming that mental illness may toll the statute of limitations, the complainant must show that her mental state prevented her from pursuing her rights during the filing period); *see also Quina v. Owens Corning Fiberglas Corp.,* 575 F. 2d 1115, 1118-19 (5th Cir. 1978) (finding that a new "averment that emotional and mental shock so affected [the plaintiff] that he was not 'cognizant' of his ADEA rights" was not sufficient for the district court to reverse its ruling that the complaint was untimely). Courts have considered several factors in determining whether a mental disorder justified equitable tolling, including (1) representation by counsel, (2) capacity to work, (3) ability to execute legal documents, (4) ability to interact with others, (5) medical evidence, and (6) adjudication of incompetency or hospitalization for mental incapacity. *Eber v. Harris Cnty. Hosp. Dist.*, 130 F. Supp. 2d 847, 866 (S.D. Tex. 2001) (collecting cases). In *Eber*, the court found that equitable tolling of the deadline was appropriate only during the time the plaintiff was in a coma and hospitalized, but not during his period of depression because depression alone did not toll the statute of limitations. *Id.* at 866-68 (citations omitted). Here, despite her allegations of mental and physical illness, Plaintiff's complaint alleges that she continued to work more than one job during the filing period, in part due to the need to comply with her legal obligation to pay taxes.

      Plaintiff's other bases for equitable tolling also fail to show entitlement to relief from the limitations bar. In *Butler v. Orleans Par. Sch. Bd.*, No. Civ. A. 00–0845, 2001 WL 1135616, *1-3 (E.D. La. Sept. 25, 2001), the district court dismissed complaint filed on the ninety-first day after the plaintiff's receipt of a right-to-sue letter due to the illness of her husband and her need to travel to care for her ill and elderly mother. Various courts have found that "financial hardship does not warrant equitable tolling." *Jones v. City of Bryan*, No. 07-3874, 2008 WL 2557469, at *3 (S.D. Tex. June 23, 2008) (collecting cases); *see also McDuffy v. Jessup*, No. 3-09-CV-2247-P, 2010

WL 743850, *3 (N.D. Tex. Mar. 2, 2010) (citing *Modisette v. Dallas Area Rapid Transit*, No. 3-06-CV-2199-B, 2007 WL 582746, *2 (N.D. Tex. Feb. 23, 2007)). An inability to afford counsel is also insufficient. *See Womack v. Teleplan*, No. 3-03-CV-34-M, 2003 WL 21289652, at *2 (N.D. Tex. May 29, 2023) (citations omitted). Finally, as for her alleged unawareness of her legal rights and obligations under Title VII and the ADEA, the Fifth Circuit has repeatedly found that an employee's ignorance of the law does not justify tolling. *See Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)("courts in a long line of cases have held that employees' ignorance of the law … cannot justify [equitable] tolling").

In conclusion, Plaintiff has not alleged sufficient facts to state a plausible claim for equitable tolling, and her lawsuit should be dismissed as time-barred.

### III. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Thomas v. Texas*, No. 3:17-CV-0348-N-BH, 2017 WL 11496979, at *2 (N.D. Tex. May 19, 2017). A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See id.* Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez*, 66 F.3d

at 97. Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff failed to timely file her lawsuit, and she has not shown that equitable tolling is justified. She has alleged her best case, and no further opportunity to amend is warranted.

## IV. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's complaint should be **DISMISSED with prejudice** as time-barred. Plaintiff's summary judgment motion should be **DENIED**.

**SO RECOMMENDED** on this 25th day of November, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11